UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| JOHN DOE, <br><br> Plaintiff, <br><br> v. <br><br> PROJECT FAIR BID INC, et al., <br><br> Defendant. | CASE NO. C11-809 MJP <br><br> ORDER ON DEFENDANT'S MOTION TO DISMISS OR TRANSFER |

The Court, having received and reviewed:

1. Defendant Project Fair Bid, Inc.'s Motion to Dismiss for Insufficient Service and Improper Venue or, in the Alternative, to Transfer Venue Pursuant to 28 U.S.C. 1404(a) (Dkt. No. 13)

2. Pltf's Response to Defendant Project Fair Bid, Inc.'s Motion to Dismiss for Insufficient Service and Improper Venue or, in the Alternative, to Transfer Venue Pursuant to 28 U.S.C. 1404(a) (Dkt. No. 19)

3. Defendant Project Fair Bid, Inc.'s Reply to Motion to Dismiss for Insufficient Service and Improper Venue or, in the Alternative, to Transfer Venue Pursuant to 28 U.S.C. 1404(a) (Dkt. No. 22)

and all attached declarations and exhibits, makes the following ruling:

IT IS ORDERED that the matter is DISMISSED under FRCP 12(b)(3) and 12(b)(5) on the grounds of improper service and improper venue.

IT IS FURTHER ORDERED, in the alternative, that should the above order be reversed on any grounds, that the matter is order TRANSFERRED to the U.S. District Court for the Northern District of California.

**Background**

On February 16, 2011, Plaintiff filed a class action suit in King County Superior Court against four Defendants and Does 1-20 for operating an illegal gambling website where players place bets to win prizes through "penny auctions." (Compl. ¶ 8.) Plaintiff chose to file anonymously out of fear of prosecution for gambling on Defendants' website. (Id. ¶ 7.) Plaintiff named Project Fair Bid, Inc. (d/b/a BigDeal.com), Mayfield Fund, Foundation Capital, First Round Capital and Does 1-20 as Defendants. (Id. ¶ 6.)

To use the website, an individual must register and agree to Terms of Service ("TOS") which include a forum selection clause requiring all matters be litigated in Santa Clara, California under California or federal law. Dkt. No. 15, Ex. 1, p. 4. There is no federal district court in that city.

Since filing the complaint, Plaintiff attempted to serve process twice. First, Plaintiff had a process server go to one of Project Fair Bid's mailing addresses, a P.O. Box at a UPS store. (Dkt. Nos. 16, 20.) The proof of service states the store manager, Scott Tate ("Tate"), accepted

service as "an authorized agent." (Dkt. No. 16.) By declaration, Tate denies being an authorized agent. (Dkt. No. 21.) Second, Plaintiff's counsel mailed a copy of the summons, complaint, and notice of removal to the same UPS store six days after Defendants filed this motion. (Dkt. No. 19 at 5.)

In May 2011, Defendants removed the case to federal court. (*See* Dkt. No. 1.) Plaintiff voluntarily dismissed the "investment defendants" (Mayfield Fund, Foundation Capital, and First Round Capital) without prejudice due to a lack of personal jurisdiction. (*See* Dkt. No. 11.) The remaining defendants are Project Fair Bid (which runs the BigDeal.com website) and Does 1-20, who are identified as employees of the Defendants whose names have not yet been discovered. (Compl. ¶ 6.)

**Discussion/Analysis**

A. Motions to Dismiss

Defendants move to dismiss because Plaintiff failed to effectuate service and failed to file this suit in the proper venue.

    1. Insufficient Service

To properly effectuate service on a corporation under federal law, Plaintiff must deliver a copy of the summons and complaint to an individual authorized to receive it on the Defendant's behalf or mail a copy to the defendant within 120 days of filing the complaint. FRCP 4(h)(1). The plaintiff bears the burden of establishing that proper service was effectuated. Unless service is waived, Plaintiff must provide the court with the server's affidavit as proof of service. FRCP 4(l)(1). Under Washington law, service of the summons must be completed within ninety days

after filing the complaint. RCW § 4.16.170. If the complaint was filed before service, then defendant must be served personally. Id.

Plaintiff has not properly served Defendant with summons and complaint. Plaintiff filed the complaint February 2011 in King County Superior Court. Plaintiff attempted to serve process twice. First, in April (prior to the removal to federal court but after the complaint was filed), Plaintiff attempted to serve process by sending a process server to one of Project Fair Bid's mailing addresses, which was a P.O. Box at a UPS store. Plaintiff did not send the process server to the company's office. The process server had Tate, a UPS employee, sign for the documents. (Dkt. No. 16.) The proof of service claims the employee was authorized to accept service but Defendant has evidence to the contrary. The employee's declaration states he was not authorized to accept service. (Dkt. No. 21, ¶ 7.) An employee at a parcel post store is not authorized to accept service under Washington or California law. *See* RCW 23B.05.040, Cal. Civ. Proc. Code § 416.10. Second (after the matter was removed and Defendant filed this motion), Plaintiff mailed a copy of the complaint and summons to the same UPS address at the end of June. Defendant denies that the UPS store is its corporate headquarters or business office.

Puzzlingly (after conceding that federal procedural law governs removed actions), Plaintiff also makes an argument that his service satisfies California procedural requirements, which permit service at a mailing address under certain circumstances. As Defendant points out, however, that procedure may only be invoked "if no physical address is known." Cal. Civ. Proc. Code § 415(a). Plaintiff does not allege that he did not know Defendant's physical address.

Plaintiff argues that, even if service was not proper, it may be deemed sufficient if (1) good cause is shown and (2) no prejudice to Defendant would occur from extending the service

deadline. Boudette v. Barnette, 923 F.2d 754, 755 (9th Cir. 1991). But, other than reciting that he has made service in compliance with the (inapplicable) California civil procedure rules, Plaintiff offers nothing by way of demonstrating the "excusable neglect" which would constitute good cause. Id. at 756. He argues that there is no prejudice to Defendant, but without a showing of excusable neglect, the Court does not even reach the issue of prejudice.

This matter is DISMISSED for lack of proper service.

2. Improper Venue

With a motion to dismiss for improper venue based on a forum selection clause, the pleadings are not accepted as true and the court may consider facts outside the pleadings. FRCP12(b)(3); Argueta v. Banco Mexicano, S.A., 87 F.3d 320, 324 (1996). Forum selection clauses are presumptively true because they are viewed as a product of negotiation. M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 9-10 (1972). Forum selection clauses control unless a party can clearly show that enforcement of the clause would be unreasonable. Id. at 15.

To demonstrate that a clause is unreasonable, the objecting party must establish that (1) the clause was the product of fraud, undue influence, or overreaching; (2) the selected forum is inconvenient and the objecting party will be deprived of its day in court; or (3) enforcement of the clause would violate a strong public policy of the forum. Argueta, 87 F.3d at 325 (citing Bremen, 407 U.S. 1). The objecting party has a heavy burden to prove the selected forum is unreasonable. Pelleport Investors, Inc. v. Budco Quality Theatres, Inc., 741 F.2d 273, 281 (9th Cir. 1984); Bremen, 407 U.S. at 18.

Plaintiff's attempt to invalidate the forum selection clause in Defendant's Terms of Service does not pass the Argueta/Bremen test.

1. There is no coercion. Plaintiff agreed to the forum selection clause when he accepted the TOS while registering at Project Fair Bid's website. Plaintiff does not contend that he was forced into using the website to bid on discounted merchandise. Plaintiff's argument that the TOS are somehow tainted by the allegedly illegal nature of the website (an issue which has not even been litigated yet) does not persuade. The TOS are a contract separate from the operation of the website, and the agreement contains a severability clause which removes unenforceable provisions while permitting enforceable provisions to remain in effect.
2. It is unknown whether California is an inconvenient forum for Plaintiff. Since Plaintiff is anonymous and has not even produced documentation confirming he is a resident of King County, the true location of Plaintiff is unknown. If Plaintiff is a resident of King County, then litigating in California would be costly but would not necessarily deprive Plaintiff of his day in court. Because of his choice to remain anonymous, the Court knows nothing of Plaintiff's financial circumstances and cannot rule on the issue of whether litigating in California would be prohibitively expensive.
3. Plaintiff has not identified any public policy of this state that would be violated by enforcing this clause. He argues that Washington has a public policy against illegal gambling, but the issue of whether Defendant's activities even constitute illegal gambling has not been litigated (and under Argueta the Court does not accept the pleadings as true since this is treated as a 12(b)(3), not a 12(b)(6), motion).

Plaintiff attempts to argue that Bremen has been overruled, but his authority for that argument is a Delaware Supreme Court case from 1996 (Outokumpo v. Eng'G Enters v.Kvaerner Enviropower, 685 A.2d 724, 733 (Dela. Sup. Ct. 1996) which simply held that, under the facts of that case, the trial court's first inquiry should have been under 28 U.S.C. 1404(a) (which governs change of venue based on convenience). As Defendant points out, this circuit (Jones v. GNC Franchising, 211 F.3d 495 (9th Cir. 2000)) and many others continue to cite Bremen as the authority governing the analysis of forum selection clauses. *See* Def Reply, p. 5.

Plaintiff's "backup" argument – that Bremen should not be applied because there are no sophisticated businesspeople or issues of international trade or admiralty law involved here – is not persuasive. Because Plaintiff is anonymous, the Court has no way of knowing whether he is a sophisticated businessperson or not, and Plaintiff presents no case authority to support his position that Bremen is restricted to cases involving international trade or admiralty law.

Finally, Plaintiff attempts to analogize Defendant's terms of service to the discredited practices of the airline company in Deiro v. American Airlines, 816 F.2d 1360 (9th Cir. 1987) or the cruise line in Levine v. Cruise West, 2007 U.S. Distr. LEXIS 27318. But those cases are distinguishable, primarily on the grounds that the plaintiffs there did not affirmatively accept the terms of the tickets which were being enforced against them. Plaintiff here was required to acknowledge that he "read and understood" the TOS before he was permitted to enter the website. This kind of "clickwrap" agreement has been upheld in several cases in this circuit and elsewhere. *See* Def Reply, p. 7.

## B. Motion to Transfer

In the alternative, Defendants move to transfer the case to the Northern District of California.

Under 28 U.S.C § 1404(a), district courts have broad discretion to transfer cases. A district court may transfer any civil action "to any other district or division where it might have been brought." 28 U.S.C § 1404(a). The statute is intended to give district courts discretion to adjudicate motions for transfer by providing "individualized, case-by-case consideration of convenience and fairness." Van Dusen v. Barrack, 376 U.S. 612, 622 (1964). A forum selection clause is considered a significant factor in this analysis. Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 29 (1988).The Ninth Circuit held the courts should consider eight factors when deciding whether to transfer:

> (1) the location where the relevant agreements were negotiated and executed, (2) the state that is most familiar with the governing law, (3) the plaintiff's choice of forum, (4) the respective parties' contacts with the forum, (5) the contacts relating to the plaintiff's cause of action in the chosen forum, (6) the differences in the costs of litigation in the two forums, (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses, and (8) the ease of access to sources of proof.

Jones v. GNC Franchising, Inc., 211 F.3d 495, 498-99 (9th Cir. 2000).

Here, Defendants make a strong showing in favor of transferring the case to California, primarily because so little is known about Plaintiff and because of the dispersion of "forum interests" represented by a possible nationwide class.

First, although Plaintiff allegedly resides in King County, Washington, he has submitted no evidence (e.g., a declaration under penalty of perjury) that he actually lives here. Further, he seeks to represent a nationwide class of members. Because the class is supposedly composed of

members from across the United States, there is no one particular geographic location where the Terms of Service were executed or the website transactions occurred. (See Compl. ¶ 87.)

Second, the forum selection clause requires that any matters be litigated under California or federal law. California is the state that is most familiar with California law.

Third, Plaintiff chose to litigate in Washington, although he has not proven that he actually resides in this forum. Furthermore, the Ninth Circuit has held that when an individual represents a class, the named plaintiff's choice of forum is given less weight. Lou v. Belzberg, 834 F.2d 730, 739 (9th Cir. 1987). Thus, Plaintiff's choice of forum is not afforded a great deal of weight in this analysis.

Fourth, the evidence demonstrates minimal contacts with the state of Washington on Defendant's part. Project Fair Bid is a Delaware company with its principle place of business in California and does not have any employees or maintain any offices in this forum. (Dkt. No. 13 at 12.) The class's contacts are unknown at this point, except for the Plaintiff who allegedly resides in King County but has provided no proof of that fact.

Fifth, it is unclear how many contacts Defendant had relating to Plaintiff's cause of action in Washington because Does 1-20 remain unknown. Based on the record currently before the Court, Defendant has had no contacts with this cause of action in this state.

Sixth, there will be significant differences in the costs of litigation between Washington and California for the parties. Plaintiff allegedly resides in King County and notes that litigating in California would impose a serious financial burden on him. But litigation would undoubtedly be cheaper for Defendant in Northern California. This factor does not favor one side or the other.

Seventh, while the Court is unaware at this point of the amount of records that will need to be produced, there is no question that all of Plaintiff's records and employees are in Northern California. And Plaintiff has not identified a single witness that resides in this state. This factor tips in Defendant's favor.

Eighth, the ease of access to sources of proof also favors Defendant at this point: all of the evidence and witnesses which the Court can be certain will be required (Plaintiff's records and employees) are in Northern California.

Finally, whatever interest Washington has in a lawsuit instituted by a lone, anonymous individual will be severely diminished if Plaintiff achieves his goal of certifying a nationwide class. Defendant cites case law that the "United States Supreme Court has held that a plaintiff's choice of forum should be accorded less deference in class action suits since all members of the class could conceivably bring suit in his or her home forum." Klingensmith v. Paradise Shops, 2007 LEXIS 51591 (W.D. Pa. July 17, 2007 (citing Koster v. (American) Lumbermens Mutual Casualty Co., 330 U.S. 518, 524 (1947)).

In weighing the relevant factors, Defendant demonstrates that California would be a better forum based on convenience and fairness. In the event that the Court's dismissal of this matter is overturned for any reason, the case is ordered TRANSFERRED to the U.S. District Court for the Northern District of California.

1     The clerk is ordered to provide copies of this order to all counsel.

2     Dated August 11, 2011.

                                                    Marsha J. Pechman
                                                  United States District Judge